**Order filed March 18, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00118-CV

_____

## TEXAS MUTUAL INSURANCE COMPANY, Appellant

## V.

## SANDRA CRUZ, INDIVIDUALLY AND AS NEXT FRIEND OF CESAR CRUZ, NARADA CRUZ, AND MIGUEL CRUZ, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-117,770**

### O R D E R

Our former opinion and judgment dated December 17, 2009, are withdrawn, and our opinion and judgment dated March 18, 2010, are substituted therefor.

TERRY McCALL

March 18, 2010                                        JUSTICE

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

**In The**

# Eleventh Court of Appeals

_____

**No. 11-08-00118-CV**

_____

**TEXAS MUTUAL INSURANCE COMPANY, Appellant**

**V.**

**SANDRA CRUZ, INDIVIDUALLY AND AS NEXT FRIEND OF CESAR CRUZ, NARADA CRUZ, AND MIGUEL CRUZ, Appellee**

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-117,770**

**O P I N I O N**

This case involves the calculation under Section 408.041 of the Texas Workers' Compensation Act of a decedent's average weekly wage for the thirteen weeks prior to his death.[1] TEX. LAB. CODE ANN. § 408.041(a) (Vernon 2006). The decedent, a welder, worked as an

---

[1]The Texas Workers' Compensation Act is found in TEX. LAB. CODE ANN. §§ 401.001-419.007 (Vernon 2006 & Supp. 2009).

independent contractor and contracted with the employer to obtain workers' compensation insurance. The contract provided that he would bill the company at the rate of "$19 per hour for equipment rental and supplies" and "$6.50 per hour for labor." Thus, the calculation under Section 408.001 turns on what portion of the $25.50 hourly payment to decedent was "remuneration" for his services and what portion was "reimbursement" to him for use of equipment and supplies.

Based on the contract and Rule 128.1 of the Workers' Compensation Rules, both the hearing officer and the appeals panel determined that his average weekly wage was $354. The widow filed suit in district court challenging the appeals panel's decision and argued that the average weekly wage should include the profit her husband made from the use of his equipment.[2] Her expert calculated the decedent's hourly wage by estimating the decedent's percentage of profit over three years and multiplying the average percentage of profit by $25.50 (the $19.00 plus $6.50). The jury adopted the expert's calculation, and the trial court entered judgment that the average weekly wage was $581. We reverse and render judgment that the average weekly wage was $354. We reverse the trial court's award of attorney's fees and expenses and remand to the trial court for a determination of the appropriate attorney's fees and expenses.

*Background Facts*

Jesus Cruz, a welder, worked as an independent contractor on projects for Wagner Manufacturing and Fabrication Company. He was killed in a motor vehicle accident in May 2003 while returning from a job he had performed for Wagner. Both parties agree that his average weekly wage should be calculated pursuant to Section 408.041(a) for the thirteen weeks prior to his death. Section 408.041(a).

Wagner provided oilfield welding services to its customers, generally at distant customer rig sites. It is not clear whether Wagner required its welders to have workers' compensation insurance; however, it is clear that Wagner made its workers' compensation insurance with Texas Mutual Insurance Company available to its welders.[3] Sections 406.144 and 406.123 of the Workers'

---

[2]The trial court denied Texas Mutual Insurance Company's motion for summary judgment.

[3]The contract with Cruz indicated that Wagner required all subcontractors to provide it with an insurance certificate that stated that the subcontractor was covered by workers' compensation insurance. However, at trial, John Allen Dinger of Wagner testified that the welder had an option whether to carry the workers' compensation insurance.

Compensation Act allow independent contractors to agree to have their hiring contractor withhold the cost of workers' compensation insurance coverage from the contract price. An agreement under these sections makes the hiring contractor the employer for purposes of our workers' compensation laws. On the date of Cruz's fatal accident, Wagner's welders were operating under a form of contract with Wagner that allowed them to obtain workers' compensation insurance through Wagner. Cruz signed his contract with Wagner in 2000.

The contract provided that Cruz was an independent subcontractor who would supply welding services utilizing his own equipment and supplies. Cruz agreed to bill Wagner at the rate of "$19 per hour for equipment rental and supplies" and "$6.50 per hour for labor." The contract provided that, for every 15.385 hours the welder worked at Wagner's request, Wagner would deduct $13.96 from his invoice to pay for the welder's workers' compensation coverage premium.

Although the Workers' Compensation Act does not define the term "average weekly wage," the Act defines "wages" as follows:

> "Wages" includes all forms of *remuneration* payable for a given period to an employee for personal services. The term includes the market value of board, lodging, laundry, fuel, and any other advantage that can be estimated in money that the employee receives from the employer as part of the employee's *remuneration* (emphasis added).

Section 401.011(43).

The Texas Workers' Compensation Commission[4] provided in Rule 128.1 that, in calculating the average weekly wage, an employee's wage shall include: (1) all pecuniary wages (as defined by Rule 126.1) paid to the employee and (2) all nonpecuniary wages (as defined by Rule 126.1) paid prior to the compensable injury. 28 TEX. ADMIN. CODE § 128.1(b)(1), (2). Rule 126.1 provides examples of pecuniary wages and nonpecuniary wages. Directly in point for this case, Rule 128.1(c) expressly provides that an employee's wage, for the purpose of calculating the average weekly wage,

---

[4]On September 1, 2005, the Texas Workers' Compensation Commission was abolished, and its rules and duties were transferred to the Department of Insurance, Division of Workers' Compensation. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265 §§ 8.001(b), 8.004(a), 2005 Tex. Gen. Laws 469, 607-08. The Division of Workers' Compensation is now administered by the Commissioner of Workers' Compensation. TEX. LAB. CODE ANN. § 402.00111(a) (Vernon 2006). This suit was filed on June 30, 2004. For convenience, we will refer to the agency as the Texas Workers' Compensation Commission as it was then known.

shall not include "payments made by an employer to reimburse the employee for the use of the employee's equipment." 28 TEX. ADMIN. CODE § 128.1(c)(1).

The Texas Workers' Compensation Commission's rules have the same force and effect as statutes and are to be construed as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 603 (Tex. App.—Austin 2000, pet. denied). Unless the rule is ambiguous, we are required to follow the rule's clear language. *Rodriguez*, 997 S.W.2d at 254. We also defer to the Texas Workers' Compensation Commission's interpretation of its own rules if its interpretation is reasonable. *Sanders v. Am. Protection Ins. Co.*, 260 S.W.3d 682, 684 (Tex. App.—Dallas 2008, no pet.).

In affirming the hearing officer, the appeals panel relied on Rule 128.1(c) in finding that the average weekly wage of Cruz during the thirteen-week period was $354:

> TEX. W.C. COMM'N, 28 TEX. ADMIN. CODE § 128.1(c)(1) (Rule 128.1(c)(1)) provides in pertinent part that AWW shall not include payments made by the employer to reimburse the employee for the use of the employee's equipment, for paying helpers, for reimbursing actual expenses related to employment such as travel related expenses, or reimbursing mileage up to the state rate for mileage. The language of the contract in evidence is clear, $19.00 per hour was being paid as rental of the decedent's equipment and as such, pursuant to Rule 128.1(c)(1), it is not to be included in the AWW.

Texas Workers' Compensation Commission Appeals Panel No. 727, Appeal No. 040891 (May 26, 2004).

In a pretrial hearing, appellee argued that John Allan Dinger had testified in his deposition that he was of the opinion that Wagner could not hire a welder for $6.50 per hour if Wagner supplied the equipment; therefore, appellee reasoned that $6.50 could not be the actual hourly wage. The trial court indicated that it was this testimony that persuaded it to conclude that the hourly rate for Cruz's labor must have been higher than $6.50. Thus, the trial court overruled Texas Mutual's objections that a jury trial was not needed and expert testimony was not relevant because the $354 weekly wage amount was correct as a matter of law. Based on the jury verdict, the trial court reversed the appeals panel's opinion and entered judgment that the average weekly wage was $581.

5

*The Jury Trial*

The Workers' Compensation Act was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. *Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666 (Tex. App.—San Antonio 2008, no pet.). The legislative goals for our workers' compensation laws are found in Section 402.021. The legislature stated that injured employees are to be provided appropriate income benefits and medical benefits in a timely and cost-effective manner. Section 402.021 further states that the legislature wanted to minimize the likelihood of disputes and resolve them promptly and fairly. The jury trial in this case reflects the problems encountered when statutes and a contract between the parties are ignored.

Steve A. Kulawik testified as the expert for appellee. Although Kulawik admitted that he did not know the legal definition of "wage" under the Texas Workers' Compensation Act and had not done any workers' compensation work, he expressed his opinion that Cruz's hourly wage was $10.68. Kulawik testified that he took Cruz's profit shown in the Schedule C in Cruz's tax returns for 2001, 2002, and 2003; added back in the depreciation expense to get a percentage of profit; averaged the percentage of profit for the three years; and then multiplied that average percentage of profit by $25.50 to arrive at the hourly wage of $10.68. He stated that the profit percentages were 31.22% for 2001, 35.6% for 2002, and 58.62% for the partial year of 2003. The average profit margin by his calculation was 41.81%. Kulawik speculated that Cruz's profit margin was higher in 2003 because he either carried some supplies over or they were provided by Wagner. However, Dinger testified that Wagner did not provide supplies to Cruz and that part of the $19 per hour in the contract was to reimburse Cruz for his supplies.

Dinger testified that he completed the final wage statement for Cruz that was submitted to Texas Mutual. The wage statement reflected that, for the thirteen-week period prior to Cruz's death, Cruz earned gross wages of $4,602 for 708 hours of personal service. The average weekly wage of $354 can be derived by dividing the $4,602 by thirteen weeks; Dinger agreed with this calculation at trial. Wagner clearly excluded the $19 per hour for equipment rental and supplies.

Dinger also testified that Cruz's tax returns showed a loss of $2,889 and income of $12,395 in 2000, a profit of $21,231 and income of $74,737 in 2001, and a profit of $15,959 and income of

6

$50,398 in 2002. Despite Kulawik's method of adding back in depreciation to obtain Cruz's profit, Dinger explained how depreciation works and how it is a deduction when profit is calculated.

Kulawik testified that he was asked to calculate in some reasonable way what Cruz's hourly wage was and that "[t]he only way [he] could think to do that [was] by his profits and losses from his business." Kulawik was not furnished Cruz's tax return for 2000 that showed a loss. Kulawik admitted that he had not seen the contract between Cruz and Wagner before it was presented to him during the trial. He said several times that it was Dinger's deposition testimony that he could not hire welders for $6.50 per hour that led him to believe that $6.50 was not the wage. Based on Kulawik's testimony, the jury found that $581 was Cruz's average weekly wage; that answer was based on the hourly wage of $10.68.

We provided this summary of the trial to demonstrate the complications of adopting appellee's approach to the average weekly wage in cases similar to this one.

*Standard of Review*

The determination of Cruz's average weekly wage is a matter of statutory interpretation. Statutory construction is a legal question that is reviewed de novo to ascertain and give effect to the legislature's intent. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). To discern that intent, we must begin with the "plain and common meaning of the statute's words." *Id.* We also consider the objective the legislature sought to achieve through the statute, as well as the consequences of a particular construction. *Id.* As stated, the Texas Workers' Compensation Commission's rules have the same force and effect as statutes and are to be construed as statutes. *Rodriguez*, 997 S.W.2d at 254.

*Analysis*

In its first three issues, Texas Mutual argues that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict because the average weekly wage was $354 as a matter of law, the judgment improperly included an amount paid to Cruz as reimbursement for his equipment in violation of Rule 128.1, and the judgment was improperly based on an estimate of Cruz's profit margin.

Section 401.011(43) of the Workers' Compensation Act defines "wages" to include "all forms of remuneration payable for a given period to an employee for personal services." Rule 128.1

7

specifies that the term "wages," for the purpose of calculating average weekly wage, includes "all pecuniary wages" paid to the employee. 28 TEX. ADMIN. CODE § 128.1(b)(1). Rule 128.1(c)(1) expressly provides that an employee's wage, for the purpose of calculating the average weekly wage, shall not include "payments made by an employer *to reimburse the employee for the use of the employee's equipment*, for paying helpers, [or] *for reimbursing actual expenses related to employment*" (emphasis added). 28 TEX. ADMIN. CODE § 128.1(c)(1).

An agency rule is presumed valid, and the challenging party has the burden of proving that the rule is invalid. *Lee v. Tex. Workers' Comp. Comm'n*, 272 S.W.3d 806, 813-14 (Tex. App.—Austin 2008, no pet.). We must defer to the Texas Workers' Compensation Commission's interpretation of its own rules, as long as its interpretation is reasonable. *See Pub. Util. Comm'n of Tex. v. Gulf States Utils. Co.,* 809 S.W.2d 201, 207 (Tex. 1991); *Sanders*, 260 S.W.3d at 684. The legislature left it to the Texas Workers' Compensation Commission to provide rules relating to what payments should be included in wages. Rule 128.1 is consistent with the Workers' Compensation Act's definition of wages as remuneration for personal services. Rule 126.1 gives examples of wages, and Rule 128.1 provides specific exclusions that are not to be included as wages. These rules are in harmony with the objectives of the Workers' Compensation Act.

The Texas Workers' Compensation Commission's interpretation of Rule 128.1 has been reasonable. *See* Texas Workers' Compensation Comm'n Appeals Panel No. 1, Appeal No. 92119, 1992 WL 358228 (May 4, 1992) (payments by employer to reimburse worker for use of worker's equipment, i.e., her car, are not to be included in worker's wage under the provisions of Rule 128.1); Texas Workers' Compensation Comm'n Appeals Panel No. 12, Appeal No. 92197, 1992 WL 324277 (July 3, 1992). It has long been recognized that payment for reimbursement of expenses is not a form of remuneration. *See* Texas Workers' Compensation Comm'n Appeals Panel No. 1, Appeal No. 92119, 1992 WL 358228. Thus, as recognized in Section 128.1(c)(1), "reimbursement" of expenses is not a form of "remuneration." Therefore, we conclude that excluding payments for reimbursement as provided in Section 128.1(c)(1) for the purpose of determining an employee's average weekly wage does not conflict with the definition of "wages" in Section 401.011(43) of the Workers' Compensation Act.

Appellee argues that Section 401.011(43) of the Workers' Compensation Act states that "wages are 'all forms of remuneration payable for a given period'" and "any other advantage that can be estimated in money." Section 401.011(43). Based on this language, appellee asserts that the intent of the legislature was that "all" and "any" income would be considered "wages." Appellee contends that whether the $19 per hour is a "form of remuneration" or an "advantage that can be estimated in money" cannot be decided by reading the statute and was a fact question for the jury.

The purpose of the contract was to enable Cruz to obtain workers' compensation insurance. The contract provided that Cruz "[could] present [his] bill to Wagner Manufacturing showing $19.00 per hour for equipment rental and supplies and $6.50 per hour for labor." Although it may be true that Wagner might have been required to pay a higher hourly wage to employ welders who would use equipment supplied by Wagner, we cannot ignore the contract of the parties that specifically stated that $6.50 would be paid as an hourly wage and that the current workers' compensation insurance premium based on that hourly wage was $13.96 for every 15.385 hours worked at Wagner's request. The contract also stated that Cruz would "bill" Wagner $19 per hour for equipment rental and supplies. The use of the term "bill" in the contract supports the conclusion that the parties intended the $19 per hour payment to reimburse Cruz for expenses that he had incurred. Dinger testified that the $19 "[was] reimbursement for rental of truck, equipment and reimbursement of supplies."

Appellee had the burden to establish Cruz's average weekly wage. *Tex. Employer's Ins. Ass'n v. Bragg*, 670 S.W.2d 712, 715 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e). Appellee attempted to show, through Kulawik's "profit" testimony, that part of the $19 per hour payment was not made to reimburse Cruz for his equipment and supplies. Appellee has not provided authority for the argument that net profit should be used in calculating the average weekly wage.

Rule 128.1 is not ambiguous. The contract is clear. Parties should be allowed to include reasonable estimates of reimbursements in their contracts, and the amounts estimated as reimbursements should not be included in calculating the employee's average weekly wage. Cruz and Wagner agreed that Wagner would pay Cruz $19 per hour to reimburse him for use of his equipment and supplies. The evidence did not show that the $19 per hour amount in the contract

9

was not a reasonable estimate of Cruz's reimbursable expenses, and Kulawik's testimony provided no support for the jury's finding that Cruz's average weekly wage was $581.

The legislative goal of the Workers' Compensation Act is to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. Texas Mutual's first three issues are sustained. We need not reach the fourth issue. Because we are reversing the trial court's determination of average weekly wage, we will also sustain the fifth issue and reverse the trial court's award of attorney's fees and expenses. That issue will be remanded to the trial court.

*This Court's Ruling*

The judgment of the trial court is reversed. We render judgment that the average weekly wage for Cruz was $354. We also reverse and remand the issue of attorney's fees and expenses to the trial court.


TERRY McCALL
JUSTICE


March 18, 2010

Panel consists of:   Wright, C.J.,
McCall, J., and Strange, J.