

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00142-CV

**DAN DANIELS,**

**Appellant**

 **v.**

**INDEMNITY INSURANCE CO. OF NORTH AMERICA,**

**Appellee**

**From the 18th District Court
Johnson County, Texas
Trial Court No. C2007-00092**

## MEMORANDUM  OPINION

Dan Daniels sued Indemnity Insurance Company of North America (Indemnity), the workers' compensation insurance carrier of his former employer, ThyssenKrupp Elevator Corporation, seeking judicial review of an adverse administrative decision of the Texas Department of Insurance, Division of Workers' Compensation (DWC). The trial court entered summary judgment for Indemnity and denied Daniels's motion for partial summary judgment and request for attorney's fees. Raising seven issues, Daniels appeals. We will affirm.

**Background**

After suffering compensable injuries while employed by ThyssenKrupp as an elevator installer, Daniels filed a claim for workers' compensation benefits, underwent surgery, and reached maximum medical improvement with a 19% impairment rating. Daniels later obtained employment as a State of Missouri elevator inspector with post-injury earnings of $691.25 per week, including the use of a vehicle for work-related purposes. Because he had an impairment rating of more than 15% and had returned to work allegedly earning less than 80% of his pre-injury average weekly wage and was otherwise qualified, Daniels sought and was awarded Supplemental Income Benefits (SIBs) for the first quarter qualifying period in the amount of $1,634.92. *See* TEX. LAB. CODE ANN. § 408.142(a) (West 2006). Indemnity disputed the award of SIBs and sought administrative review.

The decision of the hearing officer at the contested case hearing noted that Daniels had failed to show that, for the purpose of Daniels's pre-injury average weekly wage (AWW) determination, ThyssenKrupp's payments to a "health plan" were health insurance premium payments or the value of such premiums. Also, the decision noted that, for the purpose of Daniels's post-injury wage determination, Daniels had failed to show the value of the benefit of the vehicle provided by the State of Missouri. The hearing officer determined that Daniels's pre-injury AWW was $1,071.53 and that his post-injury earnings were $691.25 per week but denied the award of SIBs, ruling that Daniels had failed to establish that he earned less than 80% of his AWW during the first quarter qualifying period. The appeals panel of the DWC sustained the hearing

officer's decision, and this suit followed.

Daniels had the burden to establish his AWW. *Tex. Mut. Ins. Co. v. Cruz*, 307 S.W.3d 925, 931 (Tex. App.—Eastland 2010, pet. denied). Daniels moved for partial summary judgment, asserting that the hearing officer's AWW calculation was legally incorrect because it understated his AWW by excluding a $358 weekly payment made by ThyssenKrupp to Daniels's union for "health and other benefits." Daniels also asserted that the benefit of his employer-provided vehicle was not properly includable in his post-injury earnings because the vehicle could be used for official business only. Indemnity moved for summary judgment on the ground that the hearing officer's determination was correct and that Daniels was not entitled to SIBs as a matter of law.

## Agreed Judgment?

We first address Indemnity's contention that Daniels's appeal fails because he agreed to the judgment. We disagree.

The record shows that the trial court initially denied both sides' motions for summary judgment. After further briefing, in a letter the trial court agreed with Indemnity on the exclusion of the payment by ThyssenKrupp to Daniels's union for the AWW calculation. In another letter, the trial court ruled that Daniels could not recover attorney's fees. Daniels then filed a motion for the trial court to clarify or reconsider its rulings. Thereafter, Indemnity's attorney sent a proposed judgment to the trial court, stating: "As you have requested, attorneys for both plaintiff and defendant have signed the proposed Final judgment." After the judgment was entered, Daniels filed a motion for new trial complaining about the same issues raised in this appeal.

Below the trial judge's signature on the judgment is the word "AGREED:," below which are the signatures of counsel for Daniels and for Indemnity. The signature of Daniels's attorney is the sole basis for Indemnity's contention that the judgment is a consent judgment or an agreed judgment that can only be collaterally attacked. *See, e.g, Baw v. Baw,* 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ) ("A party cannot appeal from a judgment to which it has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation. … A party's consent to the trial court's entry of judgment waives any error, except for jurisdictional error, contained in the judgment, and that party has nothing to properly present for appellate review.").

Notably, the judgment itself does not indicate that the trial court is making a disposition of the case according to an agreement between the parties. *See In re D.C.,* 180 S.W.3d 647, 650 (Tex. App.—Waco 2005, no pet.) ("'Nowhere in the decree does it recite that the Court is making any disposition according to an agreement of the parties. The document contains the signatures of the parties and their attorneys evidencing their approval of the document as reflecting the trial court's actions.'") (quoting *Lohse v. Cheatham,* 705 S.W.2d 721, 725-26 (Tex. App.—San Antonio 1986, writ dism'd)). We agree with Daniels that the record does not support the construction of the judgment as a consent judgment or an agreed judgment. The record reflects that this case was contentiously litigated, and it appears from Indemnity's counsel's letter that the trial court wanted the parties to agree to the form of the final judgment. *See, e.g., Morse v. Delgado,* 975 S.W.2d 378, 381 (Tex. App.—Waco 1998, no writ) ("When counsel submits a proposed judgment to the court, he generally obtains consent from opposing counsel

indicating that the opposing party approves the proposed judgment as to form or as to form and substance. This practice allows the court to enter judgment without conducting a hearing to determine whether the opposing party has any objections to the proposed judgment. It facilitates the prompt entry of judgment and the initiation of the appellate process.").

And finally, that Daniels filed his motion for new trial on the merits of the summary judgment strongly tends to show that he was not entering into a consent judgment or an agreed judgment. *See Hill v. Bellville Gen. Hosp.*, 735 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("The notation, 'Approved', standing alone, is too indefinite to justify declaring, as a matter of law, that a judgment is a consent judgment. Here, there are no other indicia of consent or agreement. To the contrary, the Hills had *already* filed an appeal bond and a request to the clerk to include material in the transcript. Such existing indications of the intent to appeal strongly tend to prove that the Hills did *not* consent to the judgment rendered by the court, but rather sought to nullify and reverse that judgment. 'Consent' must be explicitly and unmistakably given, and the record does not show that it was so given in this case.").

**Standard of Review**

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the

evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion.  *See id.* at 756.  When competing motions for summary judgment are filed and one is granted and the other is denied, the general rule is that an appellate court should determine all questions presented and render the judgment the trial court should have rendered if the motions sought final judgment.  *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex. 2004); *American Housing Found. v. Brazos County Appraisal Dist.,* 166 S.W.3d 885, 887 (Tex. App.—Waco 2005, pet. denied).

### Pre-Injury AWW and Employer's Payments to Union

In issues one, three, four, and five, Daniels contends that the trial court erred in granting summary judgment to Indemnity because the $358 weekly payment made by ThyssenKrupp to Daniels's union for "health and other benefits" should have been included in calculating Daniels's AWW and because the DWC should have required Indemnity and ThyssenKrupp to file an AWW statement that included the $358 weekly payment.  In his deposition, Daniels said that he did not know if he received health insurance from his union.

The Labor Code defines wages to include "all forms of remuneration payable for a given period to an employee for personal services.  The term includes the market value of board, lodging, laundry, fuel, and any other advantage that can be estimated in money that the employee receives from the employer as part of the employee's remuneration."  TEX. LAB. CODE ANN. § 401.011(43) (West Supp. 2012).  An injured worker's AWW "is computed by dividing the sum of the wages paid in the 13

consecutive weeks immediately preceding the date of the injury by 13." TEX. LAB. CODE ANN. § 408.041(a) (West 2006). The Texas Administrative Code further provides for the calculation of AWW as follows:

> (b) Except as provided by § 128.7, an employee's wage, for the purpose of calculating the AWW, shall include:
>
> (1) all pecuniary wages (as defined by § 126.1 of this title (relating to Definitions Applicable to All Benefits)) paid by the employer to the employee even if the employer has continued to provide the wages after the date of injury (in which case these wages could be considered post-injury earnings under § 129.2 of this title (relating to Entitlement to Temporary Income Benefits)); and
>
> (2) all nonpecuniary wages (as defined by § 126.1 of this title) paid by the employer to the employee prior to the compensable injury but not continued by the employer after the injury (though only during a period in which the employer has discontinued providing the wages).

28 TEX. ADMIN. CODE § 128.1(b).

Rule 126.1 defines and gives examples of nonpecuniary wages:

> (2) Nonpecuniary Wages--Wages paid to an employee in a form other than money. Examples of nonpecuniary wages include but are not limited to:
>
> (A) Health insurance premiums;
> …
> (C) Clothing/uniforms;
> …
> (E) Payment of professional license fees;
> …
> (G) Provision of a vehicle/fuel.

28 TEX. ADMIN. CODE § 126.1.

> The affidavit of Pamela Carr, ThyssenKrupp's Payroll Manager, states in part:
>
> While employed by ThyssenKrupp Elevator Corporation, Dan Daniels was a member of the International Union of Elevator Constructors

("the Union").  During Mr. Daniels['s] employment, the Union was subject to the Company Agreement (the "CBA") with the Union, which was effective from July 9, 2002 through July 8, 2007.  The CBA provided for health insurance benefits for Union members, among other things.

ThyssenKrupp does not include monies for health insurance benefits on the Form TWCC-3 if, as in this case. [*sic*] ThyssenKrupp pays National Elevator Benefit Plans ("NEBP"), who is the plan administrator for the labor Union health insurance plan, at a certain rate per hour worked by the employee, as required by a CBA.  ThyssenKrupp does not pay employees directly for health insurance benefits.

Relying on the plain language of Rule 128.1(b), Indemnity argues that the payments made by ThyssenKrupp to Daniels's union should not be included in the AWW calculation because they are not fringe benefits "paid by the employer to the employee," but are negotiated payments by ThyssenKrupp to the union for a number of union expenses, including health benefits for union members,[1] and because they are not payments of health insurance premiums.[2]  We agree that summary judgment for Indemnity was proper on this basis and therefore overrule issues one, three, four, and five for this reason.

### Post-Injury Benefits

In issue two, Daniels complains that the trial court erred in affirming the DWC decision pertaining to Daniels's failure to prove the value of the vehicle provided to him by the State of Missouri in meeting his burden of showing that his post-injury weekly

---

[1] Indemnity is correct that Daniels's summary judgment evidence does not show that the payments at issue are actual premiums for health insurance.

[2] We also agree with Indemnity that Daniels's reliance on a DWC appeals decision, Tex. Workers Comp. Comm'n, Appeal No. 060272-s, 2006 WL 1067866 (Tex. Work. Comp. Apr. 6, 2006), is misplaced.  There the issue was whether the self-insured employer's payment of health and dental insurance *premiums* to the self-insured's health and dental insurance program, which was administered by a union health and welfare trust, should be calculated in the post-injury AWW as discontinued nonpecuniary wages.

earnings were less than 80% of his pre-injury AWW. Daniels argues that the benefit of his employer-provided vehicle was not properly includable in his post-injury earnings as nonpecuniary wages because the vehicle could be used for official business only and thus had no personal value to him.

As noted above, it is undisputed that, for pecuniary wages, Daniels's pre-injury AWW was $1,071.53 and that his relevant post-injury earnings were $691.25 per week. Eighty percent of his $1,071.53 AWW is $857.22, and $691.25 is $165.97 less than the 80% figure. Indemnity argues that the nonpecuniary wages (fringe benefits), including the use of a vehicle, that Daniels receives through his employment with the State of Missouri as an elevator inspector should be considered in determining whether the trial court's affirmance of the DWC decision is correct and that their value exceeds $165.97.

As for the vehicle, Daniels admitted at the contested case hearing that it was a benefit to him, but he could not place a value on it. In his deposition, Daniels said that he was provided the car on his first day at work, and he admitted that he had used the vehicle for personal use in the past. Daniels and Donna Moore, a State of Missouri personnel analyst with the Division of Fire Safety (the state agency Daniels works under), both testified that Daniels's vehicle was an "assigned vehicle," and the Division's regulations provide that employees who "use assigned vehicles for commuting purposes are subject to IRS reporting requirements." Moore also said that the State provides Daniels with a gas card for his state vehicle.

Daniels testified that when he began his state employment, the State paid for him to complete around six months of self-study courses to obtain necessary certifications,

and Daniels estimated the value of those courses to be between $3,500 and $5,000. Moore testified that two of the classes that Daniels had to take cost $1,295 and $480, respectively. The State also provides Daniels with health insurance, and Moore said that it began two weeks after Daniels started. She testified that while the employee pays a "fee," the State pays the premium, which was $550 a month at the time of her deposition. The State also pays the premiums on life insurance and long-term disability insurance for Daniels.

Daniels and Moore also both testified that the State provides Daniels with uniforms, and Daniels said that he therefore does not have to buy clothes for work. The State also provides Daniels with a laptop computer and a digital camera, and Daniels said that he uses both items for personal use.

We agree with Indemnity that the summary judgment evidence on Daniels's post-injury nonpecuniary wages (in the form of the benefits noted above) establishes as a matter of law that his post-injury pecuniary and nonpecuniary wages are not less than 80% of his pre-injury AWW and that he is not entitled to SIBs. The trial court properly granted summary judgment for Indemnity and denied summary judgment for Daniels on this issue. Issue two is overruled.

### Attorney's Fees and Costs

In issue six, Daniels complains that the trial court erred in denying his motion for attorney's fees. *See* TEX. LAB. CODE ANN. § 408.147(c) (West 2006); *see also Liberty Mut. Ins. Co. v. Montana*, 49 S.W.3d 599, 603-04 (Tex. App.—Fort Worth 2001, no pet.). And in issue seven, Daniels complains about the trial court's assessment of costs against him.

The parties dispute whether Daniels could recover attorney's fees were he to prevail in this appeal on his claim for SIBs, but because Daniels concedes that he can recover attorney's fees only if he prevailed on his claim for SIBs—and he has not—we need not resolve that dispute. Because Daniels has not prevailed on his claim for SIBs, he cannot recover attorney's fees. *Montana*, 49 S.W.3d at 604. We overrule issue six.

As for trial court costs, Daniels likewise concedes that the taxing of costs against him in the trial court is reversible only if he prevailed on his claim for SIBs. Because we have affirmed the trial court's decision that Daniels is not entitled to SIBs, we overrule issue seven.

Having overruled all of Daniels's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs without opinion)
Affirmed
Opinion delivered and filed July 18, 2013
[CV06]