Justice Boyd,
dissenting.
The Court holds that the Texas Workers’ Compensation Act prohibits trial courts from approving settlements that award supplemental income benefits unless the settlement complies with all of the Act’s provisions governing an award of such benefits. Because I would hold that the Act prohibits courts from approving *618 settlements unless they comply with the provisions governing settlements that award such benefits, I respectfully dissent.
I.
To be entitled to supplemental income benefits (SIBs) under the Texas Workers’ Compensation Act, an employee must meet several statutory requirements. Tex. Lab. Code § 408.142(a).[1] If the employee is entitled to SIBs, the amounts are “calculated quarterly and paid monthly,” according to a statutory formula. Id. § 408.144(a).[2]
An insurance carrier may dispute the employee’s entitlement to SIBs, the amount of the SIBs, or both. Id. § 408.147(a).[3] In either event, the carrier must request a benefit review conference, at which a Division of Workers’ Compensation officer mediates to help the parties resolve their disputes by agreement. Id, §§ 408.147(a), .410.021-.022. If the carrier and employee are unable to resolve all of their disputes at the benefit review conference, either of them may seek further relief, first through a contested case hearing, then through an appeals panel, and finally by filing suit for judicial review in an appropriate trial court. Id. §§ 410.151(a), 410.202, 410.251. Alternatively, the parties can agree to engage in binding arbitration. Id. § 410.104.
Through all of these stages of the dispute-resolution process, the Act encourages the parties to reach agreements and settlements to resolve their disputes.[4] At the benefit review conference, any “dispute *619 may be resolved either in whole or in part” by agreement, and the agreement is binding on both parties with only limited exceptions. Id. §§ 410.029-.030. If the parties are unable to resolve their disputes at the benefit review conference and agree- to arbitration, one “purpose” of the arbitration is to “enter into formal, binding stipulations on issues on which the parties agree,” and the arbitrator’s award must include a statement of “the parties’ stipulations on uncontested issues.” Id. §§ 410.101(1), 410.118(c)(3). The arbitrator’s award based on any such stipulations “is final and binding on all parties” and constitutes “a final order, of the division.” Id. § 410.119. If the parties instead, pursue a contested case-hearing, the parties may tender stipulations or agreements at the hearing. Id. § 410.166. Those stipulations and agreements are “final and binding” and not subject to further review. Id. Finally, if a party files suit for judicial review, the parties may settle any “claim or issue” with the court’s approval. Id. § 410.256(a).
The parties’ right to settle their disputes, however, is not unlimited; the Act imposes several specific requirements and restrictions on settlements. For example, a settlement generally cannot provide for a lump-sum payment of benefits. Id. §§ 408.005(a), 410.256(c)(1). In addition, the parties cannot agree to limit or terminate an employee’s right to medical benefits. Id. §§ 408.005(b), 410.256(c)(2). And if the parties dispute the extent of the employee’s impairment, they cannot agree to resolve that issue before the employee reaches “maximum medical improvement,” and any such settlement or agreement must use the Act’s impairment rating guidelines. Id. §§ 408.005(c), 410.256(d).
Moreover, throughout the stages of the dispute-resolution process, the commissioner—and at the judicial-review stage, the court—must approve any settlement. If a dispute is resolved during the administrative. process, the commissioner must confirm that the settlement “accurately reflects the agreement between the parties” “reflects adherence to all appropriate provisions of law and the policies of the division,” and “is in the best interest of the claimant.” Id. § 408.005(e) (emphasis added). Similarly, once a party files suit for judicial review, the trial court must approve any settlement, but only if it “accurately reflects the agreement between the parties,” “adheres to all .appropriate provisions of the law,” and “is in the best interest of the claimant.” Id. §: 410.256(b) (emphasis added). .
Before a court can approve a settlement, the party who filed the suit must file a copy of the proposed settlement with the division, and the commissioner must review it “to determine compliance with all appropriate provisions of the law.” Id. § 410.258(c) (emphasis added). If the commissioner determines that the proposed settlement “is not in corhpliance with the law,” the commissioner may intervene and “inform the court of each reason the commissioner believes the proposed judgment or settlement is not in compliance with the law.” Id. § 410.258(c), (e) (emphases added). Finally, any settlement “approved without complying with the requirements” to notify the commissioner or that “on its face does not comply with” the court-approval requirements “is void.” Id. §§ 410.256(g), 410.258(f). ■
II.
The Act thus makes it exceedingly clear that any settlement of a claim for workers’ compensation benefits, including SIBs, must adhere to and comply with all “applicable provisions of the law.” But “applicable” to what? The Court construes this phrase to refer to all of the Act’s require *620 ments that are “especially suitable” or “particularly pertinent” to an award of SIBs.[5] Even more broadly, the Court suggests that any settlement of any claim for any workers’ compensation benefit must comply with all of the Act’s provisions that govern the employee’s right to that benefit.[6] Thus, in the Court’s view, the amount awarded in the settlement of a claim for SIBs must perfectly match the. amount to which the worker would be entitled under the statute’s formula.[7]
I disagree. I would hold that the Act requires that settlements adhere to provisions that are “applicable” not to awards of SIBs but to settlements of claims seeking such awards. As the Court notes, the provisions that require settlements to adhere to and comply with all “applicable” provisions govern settlements of all claims for all types of workers’ compensation benefits, not just claims for SIBs.[8] Nothing in these provisions specifically addresses, or provides any indication that they relate to, the amount of a SIBs award to which the employee may be entitled. Instead, the one thing that all of these provisions address is the settlement of a claim, whether it is a claim for SIBs or any other type of benefit.
The Court’s construction would require the commissioner and courts to ensure that settlements adhere to all requirements for an award of SIBs, not just those that govern the award’s amount. This is so because the provisions that govern the award’s amount are not the only provisions that are “especially suitable” or “particularly pertinent” to SIBs awards. The provisions that govern an employee’s entitlement to SIBs are just as “suitable” and “pertinent” to a SIBs award. If, as the Court concludes, the commissioner and trial courts can only approve a settlement awarding SIBs when the amount actually matches the amount the statutory formula would permit, then it necessarily follows that they can only approve the settlement *621 when the employee’s qualifications actually match all of the entitlement requirements. The result of this construction, of course, is that the court must take evidence and, in essence, try the case despite the parties’ settlement to ensure that the parties have not agreed to an award that the employee is not entitled to -receive or to an award amount that does not match the statutory formula. In effect, there can be no settlements at all.
The Court appears to agree that its construction requires courts to ensure that settlements comply with the Act’s entitlement provisions as well as the provisions that govern the award’s amount.[9] But the Court then suggests that, even though the entitlement provisions are “applicable provisions of law” under the Court’s construction of that phrase, trial courts need not ensure that a. settlement complies with those provisions if the parties have agreed to settle the entitlement dispute.[10] The Court thus holds that courts need not ensure that a settlement adheres to the entitlement provisions if the parties agree to settle that issue even though those provisions are “applicable” to a SIBs award, but courts must ensure the settlement adheres to the amount requirements even when the parties agree to settle that issue.
The first problem with the Court’s construction is that it is simply not logical. If (as the Court holds) the trial court must ensure that all settlements adhere to and comply with all provisions that are applicable to SIBs awards, and if (as the Court concedes) the entitlement provisions are “applicable” to SIBs awards, then the Act requires courts to ensure that settlements adhere to and comply with the entitlement provisions. Under. the Act’s- plain language, the parties’ agreement to settle a dispute over the employee’s entitlement to SIBs triggers the court’s duty to ensure that the settlement complies with the entitlement provisions. That agreement to settle the entitlement dispute cannot then also be the fact that eliminates that same duty.
The second problem with the Court’s construction is its failure to justify its attempt to distinguish between an agreement to settle an entitlement dispute and an agreement to settle a dispute over the award’s amount. The only justification I can deduce from the Court’s opinion is that, in the Court’s view, the Act’s entitlement provisions require “strict[] consis-ten[cy]” with “detailed and particular conditions,” ante at 611, while the provisions that govern the award’s amount provide a “detailed and precise formula,” ante at 615, that “precisely provides how certain benefits are to be calculated,” ante at 611; see ante at 616 (stating that the formula is “replete with precise percentages and invocations of mathematical operations such as subtractions of exact numerical amounts”). The Court thus seems to suggest that parties cannot agree to settle a dispute over an award’s amount because, in light of the statutory formula, there is nothing to dispute at all. If that is the Court’s premise, the Act proves the premise wrong because the calculation of a SIBs award’s amount is no less subject to dispute than the employee’s entitlement to that award.
*622 Under the formula, the amount of a SIB for a week is equal to eighty percent of the difference, between (1) eighty percent of the employee’s pre-injury “average weekly wage,” less (2) the post-injury “weekly wage the employee earned during the reporting period.” TEX. LAB. CODE § 408.144(b). While this is a “detailed and precise formula,” ante at 615, the facts necessary to support the calculation are subject to numerous disputes. For example, the “employee’s average weekly wage” must be determined under one of six different statutory provisions, depending on the actual underlying facts. ■ Tex, Lab. Code § 408.144(b).[11] The Act specifically recognizes that these facts may be disputed, even to the point that it is “impractical or unreasonable” to compute the employee’s average weekly wage. See, e.g., id. § 408.042(f). The Act even authorizes the commissioner to select an average weekly wage amount “that is fair and just to both parties or is in the manner agreed to by the parties.” Id. § 408.042(f) (emphasis added).
Similarly, the parties may dispute the amount of the “weekly wage the employee earned during the reporting period.” Id. § 408.144(b), For example, if an employee who claims to have no earnings during the reporting period was “offered a bona fide position of employment that the employee [was] capable of performing, given the physical condition of the employee and the geographic accessibility of the position to the employee,” then “the employee’s weekly wages are considered to be equal to the *623 weekly wages for the position offered to the employee.” Id. § 408.144(c). The amount of the employee’s weekly wage thus depends on whether the employee earned anything during the reporting period, and if not, on whether the employee was “offered a bona fide position of employment,” all of which are additional facts subject to dispute.
In short, the formula for determining the amount of a SIBs award is not an automatic indisputable calculation, but depends instead on numerous facts that are as subject to dispute as the facts necessary to establish the employee’s entitlement to such an award.[12] Thus, there is no basis in the Act or in fact to distinguish a dispute over the amount of a SIBs award from a dispute over entitlement to the award for purposes of the issue we address today. Either the provisions governing entitlement and the provisions governing the amount are both “applicable provisions of law” or neither is.
In this case, it appears the parties did not dispute the facts on which the Act determines the amount of the SIBs award, but instead agreed to “split the difference” as a means to resolve their dispute over the employee’s entitlement to the award. This is what the Court seems to find so objectionable about this particular settlement. See ante at 613 (“For the court to approve a settlement that awards Jones ‘partial’ SIBs in this context is a far cry from the approval of only those settlements that adhere to all appropriate provisions of the Code.”). But our decision depends not on whether we find this settlement to be objectionable, but on whether the Act prohibits the trial- court from approving such a settlement. And that depends wholly on whether the provisions that- determine the amount of a SIBs award are “applicable provisions of law”- to which a settlement must adhere. -If (as the Court contends) they are, then so are the eligibility provisions, and there can be no true settlements at all. But if,(as.I contend) they are not, then the settlement need not comply with or adhere to them, and it is. irrelevant whether the parties split the difference or disputed the underlying facts. The calculation of the amount of SIBs is just as fact-dependent and just as subject to dispute as.the determination of the employee’s entitlement to SIBs, if not more so. There is no distinction between the two that justifies treating the provisions that’determine the amount of a SIBs award as an “applicable provision of law” but not the eligibility provisions.
III.
For these reasons, I cannot agree with the Court’s construction of the phrase “applicable provisions of law” to refer to all provisions that govern an award of workers’ compensation benefits. Instead, I would construe “applicable provisions” to refer to those that apply to settlements of a claim for such an award. As noted, the Act contains numerous provisions that expressly govern such settlements, including provisions that prohibit settlements that award a lump-sum payment of benefits, Tex. Lab. Code §§ 408.005(a), 410.256(c)(1); that limit or terminate a right to medical *624 benefits, id. §§ 408.005(b), 410.256(c)(2); that resolve an impairment dispute before the- employee reaches maximum medical improvement or without using the impairment rating guidelines, id. §§ 408.005(c), 410.256(d); or that have not first been timely served on the commissioner, id. § 410.258. I would hold that these provisions that specifically govern settlements of workers’ compensation claims are- the “applicable provisions of law” to which the commissioner and courts must ensure any settlement adheres.[13] Because the Court holds otherwise, I respectfully dissent.

. Specifically, an employee is entitled to SIBs if, “on the expiration of the impairment income benefit period[,]” the employee:
(1) has an impairment rating of fifteen percent or more from the compensable injury;
(2) has not returned to work or has returned to work earning less than eighty percent of the employee’s average weekly wage as a direct result of the employee’s impairment;
(3) has not elected to commute a portion of the impairment income benefit; and
(4) has complied with the work-search compliance standards.
Tex. Lab. Code § 408.142(a). The work-search compliance standards require the employee to provide satisfactory evidence to the Division of Workers Compensation of:
(1) active participation in a vocational rehabilitation program;
(2) active participation in work search efforts conducted through the Texas Workforce Commission; or
(3) active work search efforts documented by job applications submitted by the recipient.
Id. § 408.1415(a).

. Specifically, "the amount of a supplemental income benefit for a week is equal to 80 percent of the amount computed by subtracting the weeldy wage the employee earned during the reporting period provided by Section 408.143(b) from 80 percent of the employee’s average weeldy wage...," Id. § 408.144(b). The method for calculating the employee’s "average weekly wage” differs depending on whether the employee is a full-time employee; part-time employee; employee with multiple employment; seasonal employee; minor, apprentice, trainee, or student; member of the state military forces or Texas Task Force 1; or.school district employee. See id. §§ 408.041-.044, 408.0445-.0446. Under any calculation, the weeldy amount "may not exceed 70 percent of the state average weekly wage rounded to the nearest whole dollar.” Id. § 408.061(c).

. See also id. § 408.147(c) (referring to insurance carrier’s dispute of' a "determination that an employee is- entitled to [SIBs] or the amount of [SIBs] due”).

. The Workers’ Compensation Act defines the term ”[a]greement” as "the resolution by the parties to a dispute under this subtitle of one or more issues regarding an injury, death, coverage, compensability, or compensation. The term does not include a settlement." Id. § 401.011(3). The term "[settlement,” by contrast, refers to a "final resolution of all the issues in a workers’ compensation claim that are permitted to be resolved under the terms of this subtitle.” Id. § 401.011(40).

.. See ante at 615 ("[P]rovisions of the law that are appropriate to SIBs are those parts of the Labor Code which are especially suitable to these benefits.”), 615 (holding that "appropriate provisions” means those "that are particularly pertinent to SIBs awards”),

. See ante at 614 ("[C]ourt approvális contingent upon the settlement's compliance with the rest of the Workers’ Compensation Act.”); 615 ("[Court] approval is contingent upon a very thorough consistency with the rest of the Code’s 'appropriate provisions.’-”); 616 ("We hold that settlement of workers’ compensation disputes is tightly restricted to only those settlements that strictly comply with the meticulous governing Code provisions at hand.”).

. See ante at 611-12 ("Where supplemental income benefits are concerned, settlements cannot bypass a statutory formula.... ”); ,615 ("A SIBs award must be ‘equal’ to the sum that the formula yields.”); 61.5 (holding that the formula "is a particularly ‘appropriate’ provision of law”); 615 (‘‘[W]e hold that a court can only approve settlements that are strictly consistent with—indeed, settlements which 'adhere[ ] to’—the formula for calculating SIBs awards.”); 615 ("[C]ourts may only approve settlements that adhere to the formula.”); 615 (“Courts cannot approve a settlement for a dollar value that is not ‘equal to’ the output of the formula as applied to facts particular to the injured employee, such as his average weekly wage.”).

. The provisions that require the commissioner to ensure that a settlement reached during ■ the administrative stage adheres to all "appropriate provisions of law” appear in sub-chapter A of chapter 408, which contains "General Provisions” that apply not just to SIBs claims but to all claims for all types of benefits. . See id. § 408.005(c), (d). Similarly, the provisions that require the court and commissioner to ensure that a settlement reached during the judicial-review stage complies with "all appropriate provisions of law” appear in subchapter F of chapter 410, which contains "General Provisions” that apply not just to SIBs claims, but to all claims for all types of benefits. See id. §§ 410.256, 410.258.

. Ante at 611 (“Eligibility for benefits requires satisfaction of detailed and particular conditions, and courts do not have carte blanche to approve settlements awarding benefits that clash with these criteria.”), 612 (stating that settlements cannot “facilitate benefits where none were due as a matter of law”).

. Ante at 617 (stating that trial courts need not "independently” make "eligibility findings where neither side is willing to proffer evidence on and otherwise litigate the issue”).

. To list just some of those relevant facts, the method for determining an employee’s average weekly wage differs depending on:
— whether the employee "worked for the employer for at least the 13 consecutive weeks immediately preceding an injury,” and
• if so, whether that employee's average weekly wage "has not been fixed or cannot be determined,” and
• if not, the “usual wage that the employer pays a similar employee for similar services” or “the usual wage paid in that vicinity for the same or similar services,” id. § 408.041(a), (b);
— whether the employee's "employment has been irregular” or "the employee has lost time from work ... because of illness, weather, or another cause beyond the control of the employee,” id. § 408.041(c);
— whether the employee "limits the employee’s work to less than a full-time workweek as a regular course of that employee's conduct,” id, § 408.042(a);
— whether the employee engaged in "multiple employment” during the thirteen-week period, and if so,
• the amount of the weekly wage the employer "pays similar employees for similar services” or "the usual weekly wage paid in that vicinity for the same or similar services,” and
• the amount of the employee’s wages "that are reportable for federal income tax purposes,” id. § 408.042(c), (e);
— whether the employee was a "seasonal employee”—that is, one "who, as a regular course of the employee’s conduct, engages in seasonal or cyclical employment that does not continue throughout the entire year”—and if so, the “amount of total wages earned by the employee during the 12 months immediately preceding the date of the injury,” id, § 408.043(b), (d);
—' whether the employee was a "minor, apprentice, trainee, or student at the time of the injury,” the earnings at the time of the injury were "limited” because the position was “intended to enhance the employee’s future wages," and the wages "would reasonably be expected to change because of a change of employment during that period,” and if so, the "level of expected wages during the period that benefits are payable,” id. § 408.044(a);
— whether the employee is a "member of the. state military forces .., engaged in authorized training or duty,” id. § 408.0445(a); and
— whether the employee is a "school district employee,” and if so, the “total amount of wages earned by the employee during the 12 months immediately preceding the date of the injury,” id. § 408.0446(c).

. See, e.g., Daniels v. Indent. Ins. Co. of N. Am., No. 10-11-00142-CV, 2013 WL 3770955, at ⅜1 (Tex.App.-Waco 2013, no pet.) (mem.op.) (addressing dispute over whether employee's post-injury earnings were less than eighty percent of his “pre-injury average weekly wage”); Tex. Mut. Ins. Co. v. Cruz, 307 S.W.3d 925, 926 (Tex.App.-Eastland 2010, pet. denied) (addressing dispute over the proper calculation "of a decedent’s average weekly wage for the thirteen weeks prior to his death”); Hartford Underwriters Ins. Co. v. Hafley, 96 S.W,3d 469, 474 .(Tex.App.-Austin 2002, no pet.) (addressing dispute over proper calculation of wages of employee who was self-employed), .

. In rejecting this construction, the Court first asserts that the “Code’s requirement that settlements comply with ‘all appropriate provisions of law' extends beyond those statutory requirements relating specifically to settlements.” Ante at 616. As support for this assertion, however, the Court cites to sections 408.005, 410.029, and 410.258, ante at n. 36, all of which relate specifically to settlements. See Téx. Lab. Code §§ 408.005 (specifically prohibiting certain settlements, requiring commissioner and parties to sign settlements, specifying when commissioner shall approve a settlement, and addressing effective date and withdrawals of acceptance of setde- ' ments), 410.029 (permitting resolution of disputes during benefit review conference, re■quiring any such settlement or agreement to be written and signed, and providing for effective date of such a settlement), 410.258 (requiring parties to send copy of any proposed judgment or settlement to the division for approval).
Next, the Court asserts that this construction renders the provisions that require a trial court to ensure that a settlement adheres to all “appropriate” provisions "of little substance” and violates our duty to “give meaning to all” of the Act’s provisions because "the Code already imposes specific requirements on settlements which have the force of law.” Ante at 616. The obvious flaw in this argument is that the Act also "already imposes specific [substantive] requirements on [awards] which have the force of law,” and yet the Court finds the provisions meaningful and of "substance” as to those requirements. In any event, the Court’s argument overlooks the fact that the "substance” behind these provisions is to impose a duty on the trial courts to enforce the procedural requirements that apply to settlements. Id. § 410.256 (requiring court approval of settlements).